**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARRY G. BRUYN** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **NO. 4:25-CV-2460** |
| | : | |
| **AUBREY CARRINGTON, CARGILL** | : | |
| **MEAT SOLUTIONS CORPORATION,** | : | **CHIEF JUDGE BRANN** |
| **and TROOPER MITCHELL KERRICK,** | : | |
| | : | **ELECTRONICALLY FILED** |
| **Defendants.** | : | |

**DEFENDANTS CARGILL MEAT SOLUTIONS CORPORATION AND AUBREY CARRINGTON'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

John B. Dempsey
*jdempsey@mbklaw.com*
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
Telephone: (570) 342-6100

Susan P. Elgin (*pro hac vice*)
*Susan.elgin@faegredrinker.com*
Faegre Drinker Biddle & Reath LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000

***Attorneys for Defendants Cargill Meat Solutions Corporation and Aubrey Carrington***

# TABLE OF CONTENTS

**INTRODUCTION** .......... 1

**FACTUAL ALLEGATIONS** .......... 2

**I. Plaintiff's Allegations in the Amended Complaint.** .......... 2

**II. The Parties' Meet and Confer Efforts.** .......... 4

**III. Plaintiff Files an Amended Complaint.** .......... 5

**STATEMENT OF THE ISSUE INVOLVED** .......... 6

**LEGAL STANDARD** .......... 6

**ANALYSIS** .......... 7

**I. Plaintiff's Defamation *Per Se* Claim Fails Because Carrington's Police Report is Protected by Absolute Judicial Privilege.** .......... 7

**II. Plaintiff's False Light Claim Fails Because Carrington's Police Report is Protected by the Absolute Judicial Privilege.** .......... 10

**III. Plaintiff's Malicious Prosecution Claim Fails Because Law Enforcement Had Complete Discretion on Whether to Criminally Charge Plaintiff.** .......... 12

**IV. Plaintiff Has Not Alleged the Cargill Defendants Engaged in Extreme and Outrageous Conduct.** .......... 16

**V. Plaintiff Has Not Alleged That Carrington Previously Demonstrated a Propensity for Misconduct, Nor That CMSC Knew of This Propensity.** .......... 18

**CONCLUSION** .......... 20

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Abramowski v. Nuvei Corp.*,
166 F.4th 391 (3d Cir. 2026) ....................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................7

*Breslin v. Morgenstern*,
No. 12-0360, 2018 WL 4002857 (M.D. Pa. 2018)..........................................12

*Bronstein v. Bayview Loan Servicing, LLC*,
No. 18-4223, 2020 WL 703652 (E.D. Pa. 2020) ..........................................8

*Brown v. Gap Inc.*,
No. 1:22-cv-00165, 2023 WL 3743134 (M.D. Pa. 2023) ..........................14, 15

*Bruni v. City of Pittsburgh*,
824 F.3d 353 (3d Cir. 2016) ....................................................................2

*Commonwealth v. Bee*,
No. 120 EDA 2018, 2018 WL 3980125 (Pa. Super. 2018)..............................15

*Finkbeiner v. Geisinger Clinic*,
623 F. Supp. 3d 458 (M.D. Pa. 2022)..........................................................16

*Fought v. City of Wilkes-Barre*,
466 F. Supp. 3d 477 (M.D. Pa. 2020)..........................................................19

*Graboff v. Colleran Firm*
744 F.3d 128 (3d Cir. 2014) ....................................................................10

*Handy v. Delaware River Surgical Suites, LLC*,
No. 2:19-cv-1028-JHS, 2023 WL 11884784 (E.D. Pa. 2023) ............................8

*Henry v Marcelin*,
Civ. No. 24-1891, 2024 WL 4293055 (E.D. Pa. 2024)................................18, 19

*Hoy v. Angelone*,
720 A.2d 745 (Pa. 1998) ....................................................................17

*Louis-El v. Ebbert*,
448 F. Supp. 3d 428 (M.D. Pa. 2020)....................6, 7

*Martin v. Finley*,
349 F. Supp. 3d 391 (M.D. Pa. 2018)....................10

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
713 F. Supp. 2d 527 (W.D.N.C. 2010)....................11

*McGee v. Times Leader*,
No. 90–1098, 1990 WL 288628 (M.D. Pa. 1990)....................17

*Mifflinburg Telegraph, Inc. v. Criswell*,
277 F. Supp. 3d 750 (M.D. Pa. 2017)....................7

*Oldham v. Pa. State Univ.*,
138 F.4th 731 (3d Cir. 2025)....................19

*Prukala v. Chase Bank, N.A.*,
No. 3:19-CV-1791, 2020 WL 5351042 (M.D. Pa. 2020)....................2

*Regan v. Township of Lower Merion*,
36 F.Supp.2d 245 (E.D. Pa. 1999)....................16

*Salaam v. Trump*,
777 F. Supp. 3d 414 (E.D. Pa. 2025)....................10

*Smith v. RB Distrib., Inc.*,
498 F.Supp.3d 645 (E.D. Pa. 2020)....................19

*Starks v. N. York Cnty. Reg'l Police Dep't*,
No. 1:24-CV-00739, 2025 WL 895826 (M.D. Pa. 2025)....................2

*Sugarman v. RCA Corp.*,
639 F. Supp. 780 (M.D. Pa. 1985)....................17

*Thompson v. City of Williamsport*,
No. 4:22-CV-01159, 2024 WL 1747645 (M.D. Pa. 2024)....................17

*U.S. ex rel. Magid v. Wilderman*,
No. Civ. A. 96-CV-4346, 2005 WL 469590 (E.D. Pa. 2005)....................17

*Wartluft v. Milton Hershey Sch.*,
354 F. Supp. 3d 584 (M.D. Pa. 2018) ..... 17

*Weiser Law Firm, P.C. v. Hartleib*,
No. 2:19-cv-02728-KSM, 2022 WL 970757 (E.D. Pa. 2022) *aff'd*,
No. 23-1889, 2024 WL 5219737 (3d Cir. 2024) ..... 11

**State Cases**

*Alleyne v. Pirrone*,
180 A.3d 524 (Pa. Cmwlth. Ct. 2018) ..... 12

*Bradley v. Gen. Acc. Ins. Co.*,
778 A.2d 707 (Pa. Super. 2001) ..... 13

*Braswell v. Wollard*,
243 A.3d 973 (Pa. Super. 2020) ..... 12-13

*Corrigan v. Cent. Tax Bureau of Pa., Inc.*
828 A.2d 502, 506 (Pa. Commw. Ct. 2003) ..... 12

*Joseph v. Scranton Times L.P.*,
129 A.3d 404 (Pa. 2015) ..... 8

*Pawlowski v. Smorto*,
588 A.2d 36 (Pa. Super. 1991) ..... 8, 9, 10

*Schanne v. Addis*,
121 A.3d 942 (Pa. 2015) ..... 8, 9

*Tomaskevitch v. Spec. Recs. Corp.*,
717 A.2d 30 (Pa. Cmwlth. Ct. 1998) ..... 15

*Vivian v. Blank Rome, LLP*,
318 A.3d 890 (Pa. Super. 2024) ..... 11

**State Statutes**

35 P.S. § 780-113(a)(16) ..... 4

35 P.S. § 780-113(a)(32) ..... 4

42 Pa. C.S.A. § 8343 ..... 7

**Rules**

Rule 12(b)(6) ........................................ 1, 2, 6

**Other Authorities**

Restatement (Second) of Torts ........................................ 8, 13

## INTRODUCTION

Even after being granted nearly two-months' worth of extensions, during which time Plaintiff Barry Bruyn had advance access to the case law Aubrey Carrington and Cargill Meat Solutions Corporation ("CMSC") (collectively the "Cargill Defendants") relied on for their motion to dismiss, Plaintiff's Amended Complaint continues to rely upon scant and fatally deficient allegations. Moreover, Plaintiff also had access to the surveillance videos, which show the baggie coming off Plaintiff. Despite these extensive meet and confer efforts, Bruyn continues to pursue this meritless lawsuit and thus the Cargill Defendants are forced to burden the Court with another motion to dismiss.

Plaintiff alleges that on May 14, 2025, Defendant Carrington contacted the Pennsylvania State Police to report a baggie of methamphetamine found in the CMSC facility where she works. This report led Trooper Mitchell Kerrick to charge Plaintiff with a crime, which was withdrawn a week later. While Plaintiff is upset about being charged with a crime, none of his allegations state a claim that would entitle him to relief against the Cargill Defendants.

The Cargill Defendants ask this Court to dismiss Plaintiff's First Amended Complaint (the "Amended Complaint") pursuant to Rule 12(b)(6) for failure to state a claim. Pursuant to this Court's Order (ECF No. 4), the Cargill Defendants met with

Plaintiff's counsel and explained these deficiencies, including by providing much of the caselaw relied upon in this Motion. While Plaintiff amended his Complaint, the amendments do nothing to cure the deficiencies originally identified by the Cargill Defendants. Therefore, since Plaintiff has had an opportunity to amend, the Court's dismissal should be with prejudice. *Starks v. N. York Cnty. Reg'l Police Dep't*, No. 1:24-CV-00739, 2025 WL 895826, at *16 (M.D. Pa. Mar. 24, 2025) (dismissing complaint with prejudice where plaintiff "had the opportunity to amend" but the deficiencies remained); *Prukala v. Chase Bank, N.A.*, No. 3:19-CV-1791, 2020 WL 5351042, at *5 (M.D. Pa. Sept. 4, 2020) ("A motion to dismiss with prejudice is appropriate in cases where the plaintiff has already had the opportunity to amend her complaint, but was still unable to plead facts sufficient to survive a Rule 12(b)(6) motion.").

## FACTUAL ALLEGATIONS[1]

### I. Plaintiff's Allegations in the Amended Complaint.

CMSC owns and operates a beef processing facility in Wyalusing in Bradford County, Pennsylvania. Am. Compl. ¶ 6. Aubrey Carrington is a Senior Human Resources Generalist for CMSC at the Wyalusing facility. Am. Compl. ¶ 5.

[1] Without conceding the truth of Plaintiff's allegations, the relevant factual allegations are taken from Plaintiff's Amended Complaint. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

Several USDA Food Safety and Inspection Service Inspectors, including Plaintiff Barry Bruyn, work alongside CMSC employees at the Wyalusing facility. Am. Compl. ¶ 8.

On May 14, 2025, Carrington retrieved a small baggie containing a white powdery substance from a stairwell at the Wyalusing facility. Am. Compl. ¶¶ 10–13. Carrington conducted a drug test on the substance, which tested positive. Am. Compl. ¶ 14. Carrington also reviewed surveillance video from the stairwell where the baggie was found. *See* Am. Compl. ¶ 15.

Carrington contacted the Pennsylvania State Police, and Trooper Mitchell Kerrick responded. Am. Compl. ¶¶ 10-11. Carrington told Trooper Kerrick about the baggie and that it had tested positive. Am. Compl. ¶¶ 15–16. She also told Trooper Kerrick about the surveillance video, and—according to the Amended Complaint—that "a bag fell from Plaintiff's lab coat" while walking down the stairs. Am. Compl. ¶¶ 15–16. Trooper Kerrick "personally observed" the video and drafted an Affidavit of Probable Cause. Am. Compl. ¶ 19–20. There is no allegation that the Cargill Defendants ever encouraged, demanded, or otherwise influenced Trooper Kerrick's decision to pursue criminal charges against Plaintiff. Instead, the Complaint alleges solely that Carrington provided Trooper Kerrick with information, and then neither she nor CMSC had any further involvement.

On May 27, 2025, the Commonwealth charged Plaintiff with possession of a controlled substance, in violation of 35 P.S. § 780-113(a)(16), and possession of drug paraphernalia in violation of 35 P.S. § 780-113(a)(32). Am. Compl. ¶¶ 27–29. On June 3, 2025, the Bradford County District Attorney withdrew all charges against Plaintiff. Am. Compl. ¶ 33. Plaintiff did not return to work at the Wyalusing facility due to "anxiety, emotional distress, humiliation, and related conditions" that he allegedly suffered. Am. Compl. ¶ 36.

On December 18, 2025, Plaintiff filed this lawsuit alleging against the Cargill Defendants: (1) defamation *per se*; (2) false light invasion of privacy; (3) malicious prosecution; (4) intentional infliction of emotional distress; and (5) negligent hiring, training, supervision, and retention.

## II. The Parties' Meet and Confer Efforts.

In compliance with this Court's January 2, 2026 Order (ECF No. 4), the undersigned attorneys met and conferred with Plaintiff's counsel via video conference to avoid this motion to dismiss on February 9, 2026. Defense counsel also emailed Plaintiff's counsel with a summary of the case law included in this memorandum and attached the relevant cases. In addition, defense counsel sent the surveillance videos to Plaintiff's counsel. Plaintiff's counsel was therefore given the

opportunity to review videos described by Carrington and reviewed by Trooper Kerrick prior to deciding how to move forward in this litigation.

Counsel for the parties conferred further but were unable to reach agreement. Thereafter, on March 20, 2026, the Cargill Defendants filed a motion to dismiss Plaintiff's claims. (ECF Nos. 14–15). Plaintiff sought multiple extensions after missing both extended deadlines, and the Court set his third deadline for May 28, 2026.

## III. Plaintiff Files an Amended Complaint.

On May 28, 2026, Plaintiff filed a motion for leave to file an Amended Complaint, which the Court granted on June 2, 2026. (ECF Nos. 23, 31). Plaintiff filed his Amended Complaint on June 3, 2026. (ECF No. 32).

After months of extensions and extensive conferral efforts by the Cargill Defendants, Plaintiff's Amended Complaint does not remedy *any* of the deficiencies identified by the Cargill Defendants. Therefore, CMSC and Carrington now file this motion to dismiss Plaintiff's Amended Complaint.

Before arguing the merits of their motion to dismiss, the Cargill Defendants believe it is specifically worth noting to the Court that they provided the surveillance video to Plaintiff's counsel during the meet-and-confer process months ago. Plaintiff's counsel has had ample opportunity to review the video himself. The video

shows the baggie coming off Plaintiff. Despite this, Plaintiff has continued to insist that Carrington's description of the video was "false or materially misleading," despite having the video in his possession and despite alleging that Trooper Kerrick wrote in his affidavit that he also had access to the video. Am. Compl. ¶¶ 19-20, 58.

## STATEMENT OF THE ISSUE INVOLVED

Do the facts as stated in Plaintiff's Amended Complaint plausibly allege that the Cargill Defendants are liable for each of Plaintiff's five counts because they reported to the Pennsylvania State Police that a baggie containing an illegal substance was found at CMSC's facility and that video footage showed the baggie coming off Plaintiff?

**Recommended answer:** No.

## LEGAL STANDARD

"The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims." *Louis-El v. Ebbert*, 448 F.Supp.3d 428, 435 (M.D. Pa. 2020). Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a cause of action for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a 'complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Abramowski v. Nuvei Corp.*, 166 F.4th 391, 393 n.2 (3d Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A "formulaic recitation of the elements of a cause of action will not do." *Louis-El*, 448 F.Supp.3d at 435.

## ANALYSIS

### I. Plaintiff's Defamation *Per Se* Claim Fails Because Carrington's Police Report is Protected by Absolute Judicial Privilege.

Plaintiff's defamation *per se* claim fails because Carrington's report to the Pennsylvania State Police is absolutely privileged and cannot serve as the basis for a defamation suit. A plaintiff bringing a defamation action has the burden to plead seven elements: (1) The defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion. 42 Pa. C.S.A. §8343. Here, Plaintiff alleges defamation *per se* which obviates his need to show the sixth element, special harm. *See Mifflinburg Telegraph, Inc. v. Criswell*, 277 F.Supp.3d 750, 800 (M.D. Pa. 2017) ("A statement indicating that the plaintiff has engaged in criminal activity constitutes slander per se, obviating need for the Plaintiff to prove 'special harm' as element of defamation claim.").

Plaintiff's defamation claim fails, at least, for failure to meet the seventh element—privilege—because Carrington's statements are protected by the absolute judicial privilege.[2] Section 588 of the Restatement (Second) of Torts[3] states, "A witness is absolutely privileged to publish defamatory matter concerning another *in communications preliminary to a proposed judicial proceeding* or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." (emphasis added). The judicial privilege "is absolute and cannot be destroyed." *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. 1991). Even if the witness made the report knowing it was false, the privilege still protects the speech. *See Id.* "Thus, 'it provides a complete defense to an otherwise plausible cause of action,' even when a *per se* violation of state law is at issue." *Handy v. Del. River Surgical Suites, LLC*, No. 2:19-cv-1028-JHS, 2023 WL 11884784, at *7 (E.D. Pa. Jan. 19, 2023) (quoting *Bronstein v. Bayview Loan Servicing, LLC*, No. 18-4223, 2020 WL 703652, at *7 (E.D. Pa. Feb. 11, 2020)).

---

[2] Plaintiff cannot show the other elements for a successful defamation claim. However, given that Carrington's communications to the Pennsylvania State Police are absolutely privileged, the Cargill Defendants need not address the other elements. The Cargill Defendants reserve the right to do.

[3] The Pennsylvania Supreme Court has consistently relied on the Restatement (Second) of Torts when interpreting defamation law. *See, e.g.*, *Schanne v. Addis*, 121 A.3d 942, 947–48 (Pa. 2015); *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 428–29 (Pa. 2015).

This absolute judicial privilege has been explicitly applied to protect reporting a possible crime to the police. *Pawlowski*, 588 A.2d at 42–43.[4] In *Pawlowski*, defendants in a civil case made a report to the district attorney and the local police alleging that the opposing party perjured himself in a hearing. *Id.* at 38. The opposing party later brought a defamation suit. *Id.* However, the court held that the defendants' statements were absolutely privileged explaining, "[i]t has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." *Id.* at 41. Ultimately, the Court held that the privilege applied because they were "made solely to law enforcement officials and there is no allegation that they were republished to any other audience." *Id.*

*Pawlowski* controls this case. Here, the absolute judicial privilege squarely shields Carrington's statements from liability. The Amended Complaint only alleges that Carrington told Trooper Kerrick about the baggie and that it appeared when Plaintiff opened his lab coat in the stairwell. *See* Am. Compl. ¶¶ 11, 15. By reporting to Trooper Kerrick the contents of the baggie and by relaying the surveillance video

[4] The Pennsylvania Supreme Court cited *Pawlowski* favorably in *Schanne v. Addis*, 121 A.3d 942, 947–48.

showing the baggie, Carrington was—without question—making a statement to law enforcement. *See Pawlowski*, 588 A.2d at 41. Taking the facts alleged as true, Plaintiff's allegations fail to state a claim upon which relief can be granted. The Court should dismiss Count I.

## II. Plaintiff's False Light Claim Fails Because Carrington's Police Report is Protected by the Absolute Judicial Privilege.

Plaintiff's allegation of false light invasion of privacy fails for the same reason Plaintiff's defamation claim fails: Carrington's report to the Pennsylvania State Police was absolutely privileged. A plaintiff alleging false light must show that the defendant "publishe[d] material that is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." *Martin v. Finley*, 349 F.Supp.3d 391, 423 (M.D. Pa. 2018) (quoting *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014)). Accordingly, the standard of fault that Plaintiff must show is actual malice. *Salaam v. Trump*, 777 F.Supp.3d 414, 430 (E.D. Pa. 2025).

Plaintiff's Amended Complaint does not plausibly allege facts that would satisfy these elements. Although Plaintiff alleges generically that "Carrington acted knowingly or with reckless disregard for the falsity of the portrayal," Am. Compl. ¶ 54, the specific facts alleged contradict this statement. After discovering the baggie, the Amended Complaint alleges Carrington tested its contents for illegal

substances and that "the test was positive for methamphetamine." Am. Compl. ¶ 16. Testing the substance to ensure the baggie contained an illegal substance prior to contacting the police certainly falls short of acting with reckless disregard for the truth. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 713 F.Supp.2d 527, 538 (W.D.N.C. 2010) (holding a defendant did not act with reckless disregard for the truth where they relied on the accuracy of a positive drug test). Additionally, Carrington did not identify Plaintiff randomly; rather, she reviewed surveillance video to discover where the baggie came from. *See* Am. Compl. ¶¶ 11, 15. Such careful consideration of the facts prior to contacting the Pennsylvania State Police negates Plaintiff's ability to plead that Carrington acted with a reckless disregard for the truth.

Even if Plaintiff had alleged facts making out the above elements (and Plaintiff has not), Plaintiff's false light claim also fails because Carrington's statements are, again, shielded by the absolute judicial privilege, which also applies to false light claims. *See Vivian v. Blank Rome, LLP*, 318 A.3d 890, 904 n.8 (Pa. Super. 2024) (applying the absolute judicial privilege to a false light claim); *see also Weiser Law Firm, P.C. v. Hartleib*, No. 2:19-cv-02728-KSM, 2022 WL 970757, at *17 (E.D. Pa. Mar. 31, 2022) ("The judicial privilege protects statements made in the course of judicial proceedings from being the basis of defamation-based claims,

such as false light"), *aff'd*, No. 23-1889, 2024 WL 5219737 (3d Cir. Dec. 26, 2024); *Breslin v. Morgenstern*, No. 12-0360, 2018 WL 4002857, at *6 (M.D. Pa. Aug. 22, 2018) (applying the absolute judicial privilege to bar a false light claim). Having failed to plausibly allege a claim upon which can be granted in Count II, Plaintiff's false light claims should be dismissed.

### III. Plaintiff's Malicious Prosecution Claim Fails Because Law Enforcement Had Complete Discretion on Whether to Criminally Charge Plaintiff.

Plaintiff's claim of malicious prosecution fairs no better. "[A] successful case for malicious criminal prosecution is both rare and arduous." *Alleyne v. Pirrone*, 180 A.3d 524, 540 (Pa. Commw. Ct. 2018). And for good reason. "Malicious prosecution is an action which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty . . . It never has been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain." *Id.* (quoting *Corrigan v. Cent. Tax Bureau of Pa., Inc.*, 828 A.2d 502, 506 (Pa. Commw. Ct. 2003)). Despite this, Plaintiff touts this disfavored cause of action as his "central claim against Carrington and CMSC." (ECF No. 29).

To make out a malicious prosecution claim, Plaintiff must show: "(1) the defendant has initiated criminal proceedings against the plaintiff without probable cause; (2) the defendant has acted deliberately with malice; and (3) the proceedings have terminated in favor of the plaintiff." *Braswell v. Wollard*, 243 A.3d 973, 977

(Pa. Super. 2020). But when a malicious prosecution action is brought against a non-governmental actor, like the Cargill Defendants, the plaintiff must allege additional facts. "[G]iving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not." Restatement (Second) of Torts § 653 cmt. g.[5] "If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information." *Id.*

Even so, "to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, *was the determining factor in the official's decision to commence the prosecution*, or that the information furnished by him upon which the official acted was known to be false." *Id.* Therefore, even if a private party provides a knowingly false criminal accusation to the police—an accusation the Cargill Defendants dispute—the

---

[5] Pennsylvania courts have heavily relied on the Restatement (Second) of Torts when faced with malicious prosecution cases. *See, e.g.*, *Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 710–11 (Pa. Super. 2001) ("The law in Pennsylvania on malicious prosecution has developed to a large extent based upon the Restatement (Second) of Torts.").

defendant cannot be held liable if their accusation was not "the determining factor in the official's decision to commence the prosecution." *Id.* (emphasis added); Am. Compl. ¶ 59 (alleging "Carrington's statements were a substantial factor in initiating criminal proceedings against Plaintiff." (emphasis added)).

This Court recently decided a case that is on-point and dispositive of Plaintiff's claim. *See Brown v. Gap Inc.*, No. 1:22-cv-00165, 2023 WL 3743134, at *7–8 (M.D. Pa. May 31, 2023). In *Brown*, plaintiffs' complaint alleged that an employee at a Gap store called the police to report the plaintiffs for shoplifting. *Id.* at *2. The complaint also alleged that the employee knew her report was false. *Id.* Police officers arrived at the scene, where they talked to the Gap employee and reviewed security footage. *Id.* Then, the officers "detained, handcuffed, arrested, and placed [plaintiffs] in separate police vehicles." *Id.* Despite this, no charges were ever filed because the plaintiffs, in fact, had not shoplifted. *Id.* Plaintiffs filed a malicious prosecution suit against Gap, and Gap moved to dismiss. *Id.* at *1.

The Court granted Gap's motion. While the complaint alleged that the Gap employee's accusation was "knowingly . . . false," the complaint did not allege facts showing that the officer who initiated criminal proceedings was deprived of his discretion. *Id.* at *2, *8. Specifically, the Court relied on the fact that the officer viewed the security footage and independently determined that an arrest should be

made. *Id.* at *8. Therefore, because the Gap employee's allegation was not the "sole" reason for arresting the plaintiffs, their malicious prosecution claim failed to state a claim. *Id.*

The same thing happened here. The Amended Complaint alleges "Carrington knowingly provided false or misleading information to law enforcement . . . ." Am. Compl. ¶ 58. But it also alleges that Trooper Kerrick "personally reviewed video footage of the alleged conduct." Am. Compl. ¶ 17. In *Brown*, the Court dismissed the plaintiffs' case where the complaint conceded that the officer reviewed the security footage *prior to* making an arrest. *Brown*, 2023 WL 3743134, at *8. This case demands the same result.

Even if *Brown* were not dispositive, Plaintiff's Amended Complaint still fails to state a claim for malicious prosecution. Pennsylvania courts have explained that "[t]he showing of probable cause is an absolute defense to a charge of malicious prosecution." *Tomaskevitch v. Spec. Recs. Corp.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998). And courts have further explained that absent a showing of unreliability, a positive field test of an illegal substance constitutes probable cause. *See Commonwealth v. Bee*, No. 120 EDA 2018, 2018 WL 3980125, at *6 (Pa. Super. Aug. 21, 2018). Here, Plaintiff's Complaint does not allege that the test Carrington used was unreliable or was actually negative for illegal substances. Moreover, it also

alleges that Trooper Kerrick also performed a separate drug test, which would show he was not relying on Carrington's statements when the Commonwealth was deciding whether to file charges. Am. Compl. ¶ 26. The Court should dismiss Count III.

**IV. Plaintiff Has Not Alleged the Cargill Defendants Engaged in Extreme and Outrageous Conduct.**

The Court should dismiss Plaintiff's intentional infliction of emotional distress claim because the Complaint fails to allege that the Cargill Defendants engaged in "extreme and outrageous" conduct. To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing that the defendant's conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress;[6] and (4) caused distress that was severe. *Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458, 468 (M.D. Pa. 2022) (quoting *Regan v. Township of Lower Merion*, 36 F.Supp.2d 245, 251 (E.D. Pa. 1999)).

To show an action was "extreme and outrageous" a complaint must allege actions that are "so outrageous in character, and so extreme in degree, as to go

---

[6] As drafted, Plaintiff's Amended Complaint does not specifically allege that the Cargill Defendants' conduct caused his distress. Instead, it merely states that "Plaintiff suffered severe emotional distress requiring medical treatment." Am. Compl. ¶¶ 49, 68. This failure to connect any alleged distress to actions by the Cargill Defendants is also grounds for dismissal.

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Wartluft v. Milton Hershey Sch.*, 354 F.Supp.3d 584, 594 (M.D. Pa. 2018) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). "Mere allegations of criminal conduct are insufficient to establish that a person acted in an extreme or outrageous manner." *U.S. ex rel. Magid v. Wilderman*, No. 96-CV-4346, 2005 WL 469590, at *5 (E.D. Pa. Feb. 28, 2005).

Here, Plaintiff alleges that "Carrington's conduct in falsely accusing Plaintiff . . . of possessing or dropping methamphetamine . . . was extreme and outrageous under the circumstances." Am. Compl. ¶ 66. But this Court has consistently held that such allegations do not support a claim of intentional infliction of emotional distress. *See, e.g.*, *Thompson v. City of Williamsport*, No. 4:22-CV-01159, 2024 WL 1747645, at *17 (M.D. Pa. Apr. 23, 2024) ("Falsely initiating a criminal prosecution without probable cause ordinarily does not support a cause of action for IIED, even where the false arrest was intentionally orchestrated."); *McGee v. Times Leader*, No. 90–1098, 1990 WL 288628, at *3 (M.D. Pa. Sept. 14, 1990) (dismissing IIED claim and ruling that publishing defamatory statements is "as a matter of law . . . not sufficiently outrageous to state a claim under Pennsylvania law"); *Sugarman v. RCA Corp.*, 639 F.Supp.780, 788 (M.D. Pa. 1985) (holding that while being accused of and charged with a crime may cause a plaintiff to feel

"humiliated and embarrassed in front of his fellow employees," such conduct is "as a matter of law" not extreme and outrageous). The Court should dismiss Count IV.

## V. Plaintiff Has Not Alleged That Carrington Previously Demonstrated a Propensity for Misconduct, Nor That CMSC Knew of This Propensity.

Plaintiff's claim of negligent hiring, training, supervision, and retention similarly fails to state a claim. Each of these claims "have different elements that [Plaintiff] must plausibly allege to proceed." *Henry v Marcelin*, Civ. No. 24-1891, 2024 WL 4293055, at *3 (E.D. Pa. Sept. 25, 2024). But all of these torts "share the common requirement that [Plaintiff] show that [Carrington's] prior bad acts would have put a reasonable employer on notice of [Carrington's] propensity to injure others." *Id.*

Plaintiff's Amended Complaint falls short at every step. Nowhere does Plaintiff allege any sort of "prior bad acts" by Carrington, let alone prior bad acts that would rise to the level that put CMSC on notice of a "propensity to injure others." *Id.* Nor has Plaintiff alleged facts showing that Carrington had propensity for misconduct or ill fitness for her position in the first place. In short, nothing in the Amended Complaint suggests CMSC is liable for negligent hiring, training, supervision, or retention under Pennsylvania law.

Further, each individual tort fails based upon additional pleading defects. To state a negligent hiring claim, Plaintiff must plausibly allege that CMSC was on

notice of Carrington's purportedly dangerous propensities when hiring her. *Smith v. RB Distrib., Inc.*, 498 F.Supp.3d 645, 667 (E.D. Pa. 2020). The same is true for Plaintiff's negligent training claim. *Henry*, 2024 WL 4293055, at *3. But, as previously explained, the Amended Complaint makes no such allegation. As for Plaintiff's negligent training and supervision claim, employer "liability extends only to a servant's actions taken outside the scope of employment." *Oldham v. Pa. State Univ.*, 138 F.4th 731, 755 (3d Cir. 2025). The same is true for Plaintiff's negligent retention claim. *Fought v. City of Wilkes-Barre*, 466 F.Supp.3d 477, 520 (M.D. Pa. 2020) (explaining negligent retention claim requires showing "an employee acting outside the scope of his employment"). But Plaintiff's Amended Complaint specifically alleges "Defendant Carrington acted within the scope of her employment . . . ." Compl. ¶ 36. In short, Plaintiff alleged no facts (let alone plausible facts) that could sustain a claim against the Cargill Defendants for negligent hiring, training, supervision, and retention under Pennsylvania law. The Court should dismiss Count V.

## CONCLUSION

Plaintiff's Amended Complaint fails to state a claim for which relief may be granted. Therefore, the Court should grant the Cargill Defendants' Motion to Dismiss with prejudice.

Dated: June 16, 2026.

Respectfully submitted,

/s/ John B. Dempsey
Susan P. Elgin (pro hac vice)
*susan.elgin@faegredrinker.com*
Faegre Drinker Biddle & Reath LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

John B. Dempsey (PA ID 88017)
*jdempsey@mbklaw.com*
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

***Attorneys for Defendants Cargill Meat Solutions Corporation and Aubrey Carrington***

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

Pursuant to Local Rule 7.8(b), I certify that Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint totals 4,541 words.

Dated: June 16, 2026.

/s/ John B. Dempsey
John B. Dempsey

**CERTIFICATE OF SERVICE**

I certify that on June 16, 2026, I electronically filed DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

Dated: June 16, 2026.

Respectfully submitted,

/s/ John B. Dempsey
John B. Dempsey

***Attorney for Defendants Cargill Meat Solutions Corporation and Aubrey Carrington***